# IN THE UNITED STATES DISTRICT COURT
# FOR THE MIDDLE DISTRICT OF FLORIDA
# TAMPA DIVISION

|  |  |  |
|---|---|---|
| UNITED STATES OF AMERICA,   Plaintiff, | : : : | case no. 8:21-cv-1357-VMC-AAS |
| v. | : : |  |
| SALI HADLEY,   Defendant. | : : |  |

## MOTION FOR JUDGMENT ON THE PLEADINGS

**COMES NOW,** Defendant SALI HADLEY, through undersigned counsel, under Fed. R. Civ. P. 12(c) moves this Court to enter judgment in her favor that for the 2011 and 2012 calendar years the FBAR penalty is capped at $10,000 per form (and not $10,000 per account). In support thereof, the Defendant states as follows.

## INTRODUCTION

Currently, the Circuits and District Courts are split on the question that this motion presents: whether the FBAR penalty is capped at $10,000 per form or per account. *Compare United States v. Boyd,* 991 F.3d 1077 (9th Cir. 2021) (holding that the non-willful penalty is $10,000 per form)[1] *with United States v. Bittner,* 19 F.4th

---

[1] *See also United States v. Kaufman*, 2021 WL 83478 (D. Conn. Jan. 11, 2021); *United States v. Giraldi*, 2021 WL 1016215 (D.N.J. Mar. 16, 2021). The Fourth Circuit has suggested it would take a per-form view. *See United States v. Horowitz*, 978 F.3d 80, 81 (4th Cir. 2020) (observing but not holding, in a case concerning willful

734 (5th Cir. 2021) (holding that the non-willful penalty is $10,000 for each foreign financial account).[2]  As set forth below, the FBAR non-willful penalty is on a per form not per account basis.  Consequently, the Defendant is only subject to $20,000 in penalties (i.e., $10,000 for 2011 and $10,000 for 2012), not the $230,000 that the Government asserts.  *See* Complaint at ¶15.

## PROCEDURAL HISTORY

The Government filed its complaint seeking to reduce to judgment the $230,000 worth of Bank Secrecy Act (specifically, Report of Foreign Bank and Financial Accounts," commonly known as "FBAR") penalties the Defendant allegedly owes.

The Defendant has filed her Answer (ECF No. 11), and has asserted, as relevant here, that non-willful penalties are capped at $10,000 per year.  *See* Answer at 4th Affirmative Defense.

---

violations, that "[a]ny person who fails to file an FBAR is subject to a maximum civil penalty of not more than $10,000" (citing 31 U.S.C. § 5321(a)(5))).
[2] *See also United States v. Solomon*, 2021 WL 5001911 (S.D. Fla. Oct. 27, 2021).

# APPLICABLE LAW

## I. JUDGMENT ON THE PLEADINGS

"After the pleadings are closed — but early enough not to delay trial — a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). "Judgment on the pleadings is appropriate where there are no material facts in dispute and the moving party is entitled to judgment as a matter of law." *Cannon v. City of West Palm Beach*, 250 F.3d 1299, 1301 (11th Cir. 2001); *see also Hawthorne v. Mac Adjustment, Inc.*, 140 F.3d 1367, 1370 (11th Cir. 1998) ("Judgment on the pleadings is appropriate when there are no material facts in dispute, and judgment may be rendered by considering the substance of the pleadings and any judicially noticed facts.").

## II. FBAR

### A. Overview

The Eleventh Circuit has observed:

The Currency and Foreign Transactions Reporting Act of 1970, Pub.L. 91–508, 84 Stat. 1118 (1970), is generally referred to as the Bank Secrecy Act ("BSA"). The BSA's purpose is "to require certain reports or records where they have a high degree of usefulness in criminal, tax, or regulatory investigations or proceedings...." 31 U.S.C. § 5311. Section 241 of the BSA, codified at 31 U.S.C. § 5314, provides that the "Secretary of the Treasury shall require a resident or citizen of the United States or a person in, and doing business in, the United States, to keep records, file reports, or keep records and file reports, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency." *Id*. § 5314(a).

*In re Grand Jury Proceedings, No. 4-10*, 707 F.3d 1262, 1266–67 (11th Cir. 2013).

And,

> [a]s relevant here, the regulations require "each United States person having a financial interest in, or signature or other authority over, a bank, securities, or other financial account in a foreign country" to file a FBAR. *See* 31 C.F.R. § 1010.350(a). The FBAR is required "with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." *See* 31 C.F.R. § 1010.306(c).

*United States v. Kronowitz*, 2021 WL 76344, at *1 (S.D. Fla. Jan. 8, 2021). Accordingly, persons subject to the BSA must file an FBAR by June 30th of the following calendar year. 31 C.F.R. § 1010.306(c); *see also United States v. Green*, 457 F. Supp. 3d 1262, 1265 (S.D. Fla. 2020), *reconsideration denied*, 2020 WL 3451543 (S.D. Fla. June 9, 2020) (noting the June 30th filing date).

### B.     Non-Willful Penalty

Section 5321(a)(5) of Title 31 of the U.S. Code authorizes the non-willful FBAR penalty. It states:

> (A) Penalty authorized.— The Secretary of the Treasury may impose a civil money penalty on any person who violates, or causes any violation of, section 5314 [the FBAR requirement].
> (B) Amount of penalty— (i) In general.—Except as provided in subparagraph (C) [for willful violations], the amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.

31 U.S.C. § 5321(a)(5).

Section 5314 of Title 31, however, does not directly describe a requirement

that a taxpayer may violate. Instead, it describes certain requirements the Treasury Secretary shall impose. As relevant to this case, Section 5314 directs the Secretary to require taxpayers to "keep records, file reports, or keep records and file reports." Section 5314 states:

> (a) Considering the need to avoid impeding or controlling the export of monetary instruments and the need to avoid burdening unreasonably a person making a transaction with a foreign financial agency, the Secretary of the Treasury *shall require a resident or citizen* of the United States or a person in, and doing business in, the United States, *to keep records, file reports, or keep records and file reports*, when the resident, citizen, or person makes a transaction or maintains a relation for any person with a foreign financial agency. The records and reports shall contain the following information in the way and to the extent the Secretary prescribes: (1) the identify and address of participants in the transaction or relationship. (2) the legal capacity in which the person is acting. (3) the identity of the real parties in interest. (4) a description of the transaction.

31 U.S.C. § 5314(a) (emphasis added).

In response, the Treasury Secretary promulgated 31 C.F.R. § 1010.350, which requires persons with foreign accounts to report their relationships to the accounts "on a reporting form," specifically, "the Report of Foreign Bank and Financial Accounts (TD-F 90-22.1) [the FBAR]."

# ARGUMENT

**I.   JUDGMENT IN THE DEFENDANT'S FAVOR IS REQUIRED TO THE EXTENT THE GOVERNMENT SEEKS A PENALTY GREATER THAN $10,000 PER YEAR FOR AN UNTIMELY FBAR FILING**

As noted above, the question that has split federal courts around the county is whether the $10,000 FBAR penalty is calculated per FBAR form or per unreported FBAR account.

In cases involving construction of a statute, one begins its analysis with the text itself. *Watt v. Alaska,* 451 U.S. 259, 265 (1981). But a plain reading of Sections 5312 and 5314, and 31 C.F.R. § 1010.350 demonstrates that Congress authorized up to a $10,000 penalty for a non-willful "violation" of 31 U.S.C. § 5314. And Section 5314 itself requires filing one report per year (i.e., one FBAR per year). Accordingly, applying standard canons of statutory construction, the plain language of the regulatory regime demonstrates that the $10,000 penalty limitation applies per report rather than per account.

For the reasons that follow, this Court should follow the *Boyd, Giraldi, and Kaufman* courts and conclude that the maximum non-willful penalty is $10,000 per year.

    **A.   Section 5321 Provides for One Penalty per Form**

        **1.   Statutory Construction Favors Defendant's Reading**

"The answer to [the] question [at bar] is reached through application of the

principles of statutory construction." *Kaufman*, 2021 WL 83478, at *8.

*First*, it is well settled that "Congress generally acts intentionally when it uses particular language in one section of a statute but omits it in another." *Republic of Sudan v. Harrison*, 139 S.Ct. 1048, 1058 (2019). Within Section 5321 itself, Congress demonstrated that it knows how to base penalties on undisclosed accounts rather than unfiled forms. Section 5321(a)(5)(D)(ii) discusses the penalty for willful failure to file an FBAR. That section pegs the penalty to: "in the case of a violation involving a failure to report the existence of an account or any identifying information required to be provided with respect to an account, the balance in the account at the time of the violation." 31 U.S.C. § 5321(a)(5)(D)(ii). The non-willful penalty at Section 5321(a)(5)(B)(i) omits any reference to accounts. The "negative-implication" requires the inference that the non-willful FBAR penalty amount does not turn on the number of accounts a taxpayer may have. *See* Scalia and Garner, *Reading Law: The Interpretation of Legal Texts*, 107 (2012).[3]

*Second*, statutes should be interpreted to avoid absurd results. *See United States v. Wilson*, 503 U.S. 329, 334 (1992) (noting that absurd results are to be avoided). And the Government's assessment of the non-willful penalty on a per account basis makes a hash out of the regulatory regime. i.e., it is absurd. *Accord*

---

[3] The negative-implication canon provides that "the expression of one thing implies the exclusion of others" (*expression unius est exclusion alterius*).

Scalia & Garner, *supra*, at 234 (discussing absurdity doctrine). The non-willful FBAR penalty punishes only accidental failure to file an FBAR form. In such a situation, the number of accounts that an individual holds does not correlate with the blameworthiness of her conduct. She was not trying to conceal any of her accounts. Rather, her fault lies in overlooking the FBAR requirement completely. It is absurd to interpret Section 5321(a)(5)(B)(i) to peg the non-willful FBAR penalty to the number of accounts a person just so happens to have. This contrasts nicely with the willful FBAR penalty at Section 5321(a)(5)(D)(i). Where a taxpayer conceals her accounts on purpose, the blameworthiness of her conduct does correlate to how many accounts she is hiding, rather than how many forms the Government requires.

For example, if a taxpayer had ten thousand accounts each with one dollar in the respective accounts, the taxpayer would have an FBAR filing obligation. If the taxpayer did not file his/her FBAR, then the non-willful penalty, according to the Government's view, would be $100 million.[4]

However, "for willful violations, the statute allows a civil penalty of the greater of $100,000 or 50 percent of the amount determined under subparagraph (D)." *Kaufman*, 2021 WL 83478, at *9 (cleaned up and citing to 31 U.S.C. §

---

[4] 10,000 accounts multiplied by $10,000 = $100,000,000.

8

5321(a)(5)(C)(i)).  Thus, under this hypothetical, the FBAR penalty *for a willful violation* would be $100,000.

It makes no sense whatsoever (i.e., it leads to absurd results) for the non-willful penalty to be 1,000 times larger than the willful penalty.[5]  As the *Kaufman* court observed, "it would make little sense to read § 5321(a)(5)(A) and (B)(i) to impose per-account penalties for non-willful FBAR violations when the number of foreign financial accounts an individual maintains has no bearing whatsoever on that individual's obligation to file an FBAR in the first place." *Id*. (citation omitted).  *See also id*. at *10 ("Perhaps more troubling is the prospect that under some circumstances, a *non-willful* violator could be exposed to a significantly higher penalty than a *willful* violator[.]") (emphasis in original); *Giraldi*, 2021 WL 1016215, at *6 ("in certain circumstances the Government's proposed construction would allow a similarly situated non-willful violator to incur more penalties than a willful violator.").

Indeed, the *Giraldi* court offered its own hypothetical to demonstrate that the Government's construction of the statute can provide greater penalties for non-willful violations that willful ones.  *See id.* (offering an example of $100,000 evenly divided across twenty (20) foreign financial accounts). Forsooth, limiting the non-

---

[5] $100 million ÷ $100,000 = 1,000.

willful penalty to a single per-form penalty (rather than multiple per-account penalties) is the only interpretation consistent with the statutory text that authorizes "*a civil money penalty* on any person who violates, or causes any violation of, any provision of section 5314." 31 U.S.C. § 5321(a)(5)(A) (i.e., the statute only authorizes *a* single *penalty*, not multiple penalties).

Thus, statutory construction supports the Defendant's contention that Congress authorized up to a $10,000 penalty on a per form and not on a per account basis.

### 2. Tax Statutes are Construed Against the Government

Historically, strict construction has construed tax statutes narrowly against the Government in favor of taxpayers. *Royal Caribbean Cruises, Ltd. v. United States*, 108 F. 3d 290, 294 (11th Cir. 1997) (citing, *inter alia, Miller v. Standard Nut Margarine Co.*, 284 U.S. 498, 508 (1932); *Gould v. Gould*, 245 U.S. 151, 153 (1917)). The BSA is considered part and parcel of the regulatory regime in place that protects the Government's fisc. *See In re Grand Jury Proceedings, No. 4-10*, 707 F.3d at 1266–67 (the BSA's purpose is "to require certain reports or records where they have a high degree of usefulness in *criminal, tax, or regulatory investigations* or proceedings....") (emphasis added).

This canon of construction operates so that only the explicit, clear intent of Congress carries through the language of the statutes. *See Mohamed v. Comm'r*, T.C.

Memo. 2013-255, 2013 WL 5988943, at *10 (T.C. 2013) ("For many years, the Supreme Court of the United States subjected tax laws to the same or a similar canon, holding that in the case of doubt statutes levying taxes are construed most strongly against the government, and in favor of the citizen.'") (cleaned up, citing, *Gould, supra* and Scalia & Garner, *supra*, at 299).

Indeed, the Ninth Circuit in *Boyd* concluded that (in the context of FBAR non-willful penalties) "even if the statute were ambiguous in its treatment of non-willful penalties, we must strictly construe a tax provision which imposes a penalty; it cannot be assessed unless the words of the provision plainly impose it." 991 F.3d at 1085. Thus, the *Boyd* court "strictly construe[d] the statute against the government." *Id*. at 1086.

Thus, if the Court determines that 31 U.S.C. § 5314(a) and 31 C.F.R. § 1010.350 are ambiguous,[6] the strict construction canon supports the Defendant's contention that Congress authorized up to a $10,000 penalty on a per form and not on a per account basis.

### 3. Rule of Lenity

"The rule of lenity is an interpretive canon that may be expressed as follows: 'Ambiguity in a statute defining a crime or imposing a penalty should be resolved

---

[6] Given the divergence of views among federal jurists, at no point can the statutory language be considered univocal; thus, strict construction would have to come to bear and operates to cause the language to be construed against the Government.

in the defendant's favor.'" *Mohamed,* 2013 WL 5988943, at *10 (quoting Scalia & Garner, *supra*, at 296). Indeed, "the rule of lenity . . . applies if, after considering text, structure, history, and purpose, there remains a grievous ambiguity or uncertainty in the statute, such that the Court must simply guess as to what Congress intended." *Barber v. Thomas*, 560 U.S. 474, 488 (2010).  The rule is most often applied in the criminal context, but also applies "when the civil sanctions in question are punitive in character." *Leslie Salt Co. v. United States*, 55 F.3d 1388, 1398 (9th Cir. 1995); *see also Johnson v. United States*, 135 S.Ct. 2551, 2577 n.1 (2015) (Thomas, *J.*, concurring) ("[A] law imposing a monetary exaction as punishment for noncompliance with a regulatory mandate is penal."). Even in the tax context, "tax provisions which impose a penalty [are] to be construed strictly; a penalty cannot be assessed unless the words of the provision plainly impose it." *Bradley v. United States*, 817 F.2d 1400, 1402–03 (9th Cir. 1987) (cleaned up).  *See also Mohamed, supra*, at *10 (applying the rule of lenity in civil tax context).

Thus, if the Court determines that 31 U.S.C. § 5314(a) and 31 C.F.R. § 1010.350 are ambiguous, the rule of lenity supports the Defendant's contention that Congress authorized up to a $10,000 penalty on a per form and not on a per account basis.

## B. The Government's Publications Have, at times, Supported the Defendant's View

The Treasury Department itself has recognized the wisdom of treating Section 5321(a)(5)(B)(i) to permit only a single $10,000 penalty per non-willful failure to file an FBAR form. Most notably, in 2015, the IRS implemented a policy that "in most cases, examiners will recommend one penalty per open year, regardless of the number of unreported foreign accounts." Internal Revenue Manual 4.26.16.6.4.1.[7] Further, the FBAR instructions—drafted by the Treasury Department itself—state that "[a] person who is required to file *an FBAR* and fails to properly file may be subject to a civil penalty not to exceed $10,000 *per violation*." TD-F 90-22.1 Instructions, at p. 8 Penalties. (emphasis added). This term "violation" refers back to failure to file "an FBAR" and implies that the $10,000 penalty is per form. And, just as Congress could have in the statutory text itself, the Treasury Department could easily have said that the civil penalty is "not to exceed $10,000 per undisclosed account." But it did not.

Publications by FinCEN—the Treasury Department bureau that since 1990 actually collects and uses FBAR information—likewise suggest an understanding that Section 5321(a0(5)(B)(i)'s $10,000 limit applies per form. In its publication, *Financial Crimes Enforcement Network: Amendments to the Bank Secrecy Act*

---

[7] Because the alleged violations here occurred prior to 2015, the Defendant has not received the benefit of this policy.

*Regulations – Reports of Foreign Financial Accounts*, 75 FR 844-01, 2010 WL 667290, at *8854 (Fed. 26, 2010), FinCEN described the FBAR penalty regime and observed that "[a] person who is required to file an FBAR and fails to properly file may be subject to a civil penalty not to exceed $10,000." Here, FinCEN observes that the $10,000 limitation applies to each failure to properly file, rather than each undisclosed account. Again, FinCEN could have stated that a person who fails to file an FBAR is "subject to a civil penalty not to exceed $10,000 *per undisclosed account*." But it did not.

In sum, the only reasonable interpretation of Section 5321(a)(5)(B)(i) is that it limits the non-willful FBAR penalty to $10,000 per unfiled FBAR form per year, rather than to $10,000 per undisclosed account per year. Accordingly, this Court should grant partial summary judgment in the Defendant's favor to the extent that the Government seeks more than $10,000 per year in penalties.

### C.     The Majority of Cases Support the Defendant's View

"'[T]he amount of any civil penalty imposed under subparagraph (A) shall not exceed $10,000.' 31 U.S.C. § 5321(a)(5)(B)(i). Thus, the statute provides for a singular civil money penalty, capped at $10,000, that attaches to each violation of § 5314." *United States v. Bittner*, 469 F. Supp. 3d 709, 718 (E.D. Tex. 2020), *aff'd in part, vacated in part, rev'd in part*, 19 F.4th 734 (5th Cir. 2021). That district court reasoned, "it is the failure to file an annual FBAR that is the violation contemplated

and that triggers the civil penalty provisions of § 5321." *Id.*

Dispatching with the Government's argument that the FBAR penalty is calculated on a per account basis, the *Kaufman* court stated: "Congress clearly knew how to make FBAR penalties account specific." *Kaufman*, 2021 WL 83478, at *9 (citation omitted). Indeed, the *Kaufman* court observed that Congress "had a template for how to relate an FBAR reporting penalty to specific financial accounts, and the fact that it did not do so for non-willful violations is persuasive evidence that it intended for the non-willful penalties not to relate to specific accounts." *Id.* (cleaned up). Ultimately, the *Kaufman* court concluded that "it would make little sense to read § 5321(a)(5)(A) and (B)(i) to impose per-account penalties for non-willful FBAR violations when the number of foreign financial accounts an individual maintains has no bearing whatsoever on that individual's obligation to file an FBAR in the first place." *Id.* (citation omitted).

The *Giraldi* court likewise "conclude[d] that Congress intentionally omitted account-specific language when crafting the non-willful provision because it simultaneously created an exception that expressly depends on the proper reporting of either the "balance in the account" or the transactional amount." *Giraldi*, 2021 WL 1016215, at *6 (citations omitted). And, "[a]bsent explicit direction from Congress, it is illogical to interpret Section 5321(a)(5)(B)(i) to provide penalties on a per account basis when the FBAR reporting requirement is

completely independent of how many accounts an individual maintains." *Id*. at *7 (citation omitted). Thus, "it defies logic to impose penalties on a per account basis without clear Congressional intent to the contrary, particularly when Congress included account-specific language in both the reasonable cause exception and willful penalty provision." *Giraldi*, 2021 WL 1016215, at *8.

The Ninth Circuit in *Boyd* also concluded that "[t]he statute, read with the regulations, authorizes a single non-willful penalty for the failure to file a timely FBAR." 991 F.3d at 1079–80. In reviewing the statutory scheme, the Ninth Circuit concluded that:

> There are two relevant regulations. The first requires a citizen (like Boyd) to report financial interests in foreign accounts "for each year in which such relationship exists and [to] provide such information as shall be specified *in a reporting form* prescribed under 31 U.S.C. 5314 …. The *form* prescribed under section 5314 is the Report of Foreign Bank and Financial Accounts [the FBAR] …." 31 C.F.R. § 1010.350(a) (emphases added). The second requires that the FBAR "be filed … on or before June 30 of each calendar year with respect to foreign financial accounts exceeding $10,000 maintained during the previous calendar year." Id. § 1010.306(c). Thus, § 1010.350 (and the FBAR form) describes what information must be disclosed in the report prescribed by § 5314—the FBAR—while § 1010.306 imposes a deadline for when the FBAR must be filed.

*Id*. at 1081–82 (footnote omitted). Accordingly, "[t]he maximum penalty for a non-willful violation "shall not exceed $10,000[,]" *id*. at 1080 (citing Section 5321(a)(5)(B)(i)), not $10,000 per account as the Government posits.

This Court should follow the well-reasoned decisions in *Boyd, Giraldi,* and

*Kaufman* and conclude that non-willful FBAR penalties are capped at $10,000 per year. Consequently, judgment on the pleadings must be entered in the Defendant's favor to reduce the penalties to $10,000 per year (reducing the amount to $20,000 in total).

## CONCLUSION

**WHEREFORE**, the Court should enter judgment on the pleadings in the Defendant's favor.

Respectfully submitted,

_____   January 3, 2022
Joseph A. DiRuzzo, III
Fla. Bar No. 0619175
DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)
jd@diruzzolaw.com


/s/ Daniel M. Lader
Daniel M. Lader
Fla. Bar No. 1004963
DIRUZZO & COMPANY
401 East Las Olas Blvd., Suite 1400
Ft. Lauderdale, FL 33301
954.615.1676 (o)
954.827.0340 (f)
dl@diruzzolaw.com

## CERTIFICATE OF SERVICE

I **HEREBY CERTIFY** that on January 3, 2022, a true and correct copy of the foregoing has been filed via ECF and that a NEF will be provided to counsel of record.

_____
Joseph A. DiRuzzo, III

DIRUZZO & COMPANY
401 EAST LAS OLAS BLVD., SUITE 1400, FT. LAUDERDALE, FL 33301 • T: 954.615.1676 • F: 954.827.0340 • WWW.DIRUZZOLAW.COM